UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTIE MICHELE HARVEY,<br><br>    Plaintiff,<br><br>   v.<br><br>ANDREW SAUL, Commissioner of Social Security,<br><br>    Defendant. | No. 1:19-cv-01108-GSA<br><br>**ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT COMMISSIONER OF SOCIAL SECURITY, AND AGAINST PLAINTIFF** |

**I.    Introduction**

Plaintiff Christie Michele Harvey ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability insurance benefits pursuant to Title II of the Social Security Act. The matter is before the Court on the parties' briefs which were submitted without oral argument to the Honorable Gary S. Austin, United States Magistrate Judge.[1] *See* Docs. 23, 27, 29. After reviewing the record the Court finds that substantial evidence and applicable law support the ALJ's decision. Accordingly, Plaintiff's appeal is denied.

**II.    Procedural Background**

On June 1, 2015 Plaintiff applied for disability insurance benefits claiming disability beginning December 1, 2011 due to lumbar spine disorder, pelvis disorder, bilateral knee arthritis, left toe arthritis, and tennis elbow. AR 147, 365–66. The Commissioner denied the application initially on September 25, 2015, and on reconsideration on January 27, 2016. AR 148, 156.

Plaintiff requested a hearing, which was held before Administrative Law Judge Ruxana Meyer (the "ALJ") on September 14, 2017, followed by supplemental hearings on March 26 and July 11, 2018. AR 41, 72, 81. Plaintiff was represented by counsel at the first and third

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. *See* Docs. 10 and 12.

1

hearings.[2] AR 41, 81. On August 1, 2018, the ALJ issued a decision denying Plaintiff's application. AR 20. The Appeals Council denied review on April 23, 2019. AR 4. On August 13, 2019, Plaintiff filed a complaint in this Court. Doc. 1.

### III. Factual Background

#### A. Plaintiff's Testimony

Plaintiff testified as follows at her first hearing on September 14, 2017. Plaintiff lived with her husband and 13-year-old son. AR 92. She was unable to drive following a recent neck surgery but drove periodically prior to surgery. AR 93. She drove her son to school about three minutes away. AR 93. She worked at Safeway until 2011 as a cashier when she underwent right knee surgery. AR 96. On a typical day she got up, made her husband lunch and took her son to school. She did some chores throughout the day, resting as needed. AR 100. She passed time by watching television. AR 101. She periodically changed positions because prolonged sitting or standing caused pain. AR 111. At least one day per week she couldn't do anything but rest. AR 112.

At a supplemental hearing on July 11, 2018, Plaintiff testified that she had a "bad day" 3 to 4 days weekly with severe pain in her neck and left shoulder. AR 46-47. Lifting negligible weight caused shooting arm pain. AR 47. Prior to her date last insured of June 30, 2016, she struggled to use her hands and could do household activities for only 4 to 5 hours. AR 48. The rest of the day she rested, elevated her knees, and applied ice or heat. AR 48–49.

#### B. Medical Opinions[3]

On April 12, 2018,[4] Dr. Jemjem (Plaintiff's primary care physician) completed a physical

---

[2] Plaintiff underwent a consultative examination after her first hearing and Plaintiff's initial counsel requested a supplemental hearing. AR 44. Although the request was granted, counsel withdrew the day before the supplemental hearing and Plaintiff appeared without representation. AR 74–80. The ALJ granted Plaintiff additional time to review the examination report and request a third hearing if necessary, which she did. *Id.* Plaintiff was represented by new counsel at the third hearing, who is current counsel of record for this appeal. AR 44.

[3] An exhaustive medical history summary is unwarranted here in light of Plaintiff's limited focus on the ALJ's rejection of Dr. Jemjem's opinion, which will be the Court's focus as well. To the limited extent that other medical records are brought to bear on Plaintiff's arguments regarding the supportability of Dr. Jemjem's opinion, those records will be discussed in the course of the Court's analysis.

[4] Although the signature block of Dr. Jemjem's opinion does appear to read "2019," which is the date cited by the parties as well, the "9" was either a misprint or a poorly written "8." The ALJ's decision cites the date of Dr. Jemjem's opinion as April 12, 2018. Considering that the ALJ's decision itself is dated August 1, 2018, she could not have been analyzing a medical opinion which postdated her decision.

medical source statement. AR 949–52. He noted diagnoses of cervical and lumbar spinal stenosis and severe osteoarthritis of both knees. AR 949. He identified her symptoms of neck pain radiating to the arms, low back pain with numbness to the thigh, bilateral knee pain and swelling, and headaches. AR 949. In characterizing her pain, Dr. Jemjem stated "prolonged sitting [and] standing aggravates the pain." AR 949. He identified the following clinical findings and objective signs: limited range of motion in the neck and back. AR 949. In describing her treatment and response, he stated: "surgery on the neck, physical therapy, pain medication no significant response [illegible] pain medication cause drowsiness." AR 949.

Dr. Jemjem opined that Plaintiff can walk a half block before resting, sit for 20 minutes at a time and stand for 30 minutes at a time, and could sit and stand/walk less than 2 hours each in an 8-hour working day. AR 950. He opined she does not need a job requiring shifting positions at will from sitting, standing, or walking, but would need to walk for 5 minutes every 30 minutes, and would need 2 unscheduled 10-minute breaks per day due to knee, back, and neck pain. AR 950. He opined Plaintiff's legs should be elevated above the heart with prolonged sitting due to bilateral leg and knee pains. AR 950. He opined she would not need a cane or other assistive device when engaging in occasional standing and walking. AR 950.

He further opined she could lift and carry 10 pounds frequently and 20 pounds occasionally, could never twist, rarely stoop, rarely crouch/squat, and rarely climb stairs or ladders, she would be off task 25% or more of a workday, was capable of low stress work, and would be absent from work more than 4 days per month. AR 951. He identified April 2016 as the earliest date her functional limitations would apply. AR 952.

### C. **Vocational Expert**

The ALJ questioned the VE regarding a hypothetical individual with Plaintiff's age, education, and work experience who could perform a range of sedentary work. AR 60–61. The VE testified that such an individual could not perform Plaintiff's past relevant work as a grocery cashier but could perform jobs existing in significant numbers in the national economy, namely ticket counter sales, charge account clerk, and telephone clerk. AR 60–61. If the individual were

off task for 25% or more of a workday, no work would be available. AR 62. If the individual required 2 unscheduled 10-minute breaks each day, no work would be available. AR 62. If the individual had to elevate her lower extremities above the heart 15% of the time while seated, no work would be available. AR 62. Finally, if the individual would likely be absent from work more than 4 days per month, no work would be available. AR 62.

### IV. Standard of Review, Generally

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted). When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and internal quotation marks omitted).

If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citations and internal quotation marks omitted).

4

## V. The Disability Standard

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(A).  An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

> 42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability.  20 C.F.R. §§ 416.920(a)-(f).  The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled.  20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform his past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level.  20 C.F.R. § 416.920(a)-(f).

## VI. The ALJ's Decision

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the period from her alleged disability onset date of December 1, 2011 through her date last insured of June 30, 2016.  AR 25.  At step two, the ALJ found that Plaintiff had the following severe impairments: status post anterior cervical discectomy/osteophytectomy and fusion with instrumentation at C4-C5, C5-C6, and C6-C7; status post granuloma removal; status post remote bilateral knee arthroscopy, secondary to degenerative joint disease of the knees; degenerative disc

5

disease of the lumbar spine at L5-S1; and morbid obesity due to excess calories. AR 26. The ALJ also found that Plaintiff had the following non-severe impairments: hypertension, asthma, history of laparoscopic hysterectomy, laparoscopic cholecystectomy, and laparoscopic herniorrhaphy. AR 26. At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 26.

Prior to step four, the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded that Plaintiff had the RFC to perform a range of sedentary work as defined in 20 C.F.R. 404.1567(a), could sit uninterrupted for 2-hour increments, stand and walk in 2-hour increments, changing position between sitting and standing for 5 minutes every 2-hours, frequently push, pull and reach with both upper extremities, frequently operate foot controls with both lower extremities, frequently stoop, crouch, and climb ramps or stairs, occasionally climb ladders, ropes or scaffolds, frequently operate a motor vehicle and frequently be exposed to loud noise. AR 27.

At step four, considering Plaintiff's RFC, the ALJ concluded that Plaintiff could not perform her past relevant work as a grocery cashier checker. AR 32. At step five, the ALJ concluded that Plaintiff could perform other work existing in significant numbers in the national economy, including ticket counter sales, charge account clerk, and telephone clerk. AR 33. Accordingly, the ALJ concluded that Plaintiff was not disabled. AR 34.

**VII.   Issues Presented**

Plaintiff asserts one claim of error. Plaintiff contends that the ALJ erred in rejecting the opinion of her treating physician, Dr. Jemjem, without considering the consistency of the opinion with the record as a whole and without setting forth specific, legitimate reasons for rejecting the opinion. Br. at 1, Doc. 23.

**A.   Applicable Law**

Before proceeding to step four, the ALJ must first determine the claimant's residual functional capacity. *Nowden v. Berryhill*, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2

(C.D. Cal. MAR. 2, 2018). The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC must consider all of the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96–8p.

A determination of residual functional capacity is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner. *See* 20 C.F.R. §§ 404.1527(d)(2) (RFC is not a medical opinion), 404.1546(c) (identifying the ALJ as responsible for determining RFC). "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). In doing so, the ALJ must determine credibility, resolve conflicts in medical testimony and resolve evidentiary ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995).

"In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record such as medical records, lay evidence and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins*, 466 F.3d at 883. *See also* 20 C.F.R. § 404.1545(a)(3) (residual functional capacity determined based on all relevant medical and other evidence). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

The opinions of treating physicians, examining physicians, and non-examining physicians are entitled to varying weight in residual functional capacity determinations. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995), as amended (Apr. 9, 1996). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient

7

as an individual. *Id.*; *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a contradicted opinion of a treating professional may be rejected for "specific and legitimate" reasons. *Id.* at 830. In either case, the opinions of a treating or examining physician are "not necessarily conclusive as to either the physical condition or the ultimate issue of disability." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).

**B.    Analysis**

Here, Dr. Jemjem opined that Plaintiff could walk a half block, sit and stand 20-30 consecutive minutes, stand/walk less than 2 hours per workday, must walk for 5 minutes every 30 minutes, needs 2 unscheduled 10-minute breaks daily, must elevate her legs above the heart with prolonged sitting, could never twist, rarely stoop, rarely crouch/squat, rarely climb stairs or ladders, would be off task 25% or more of a workday, could perform low stress work, and would be absent more than 4 work days monthly. AR 950–52.

Dr. Jemjem's opinion was contradicted by the opinions of consultative examiners Dr. Van Kirk and Dr. Wagner, who opined that Plaintiff could stand/walk 6 hours in an 8-hour workday, sit without restriction, perform some postural activities occasionally and some frequently, and could perform manipulative activities either frequently or without limitation. AR 598, 688. Dr. Jemjem's opinion was also contradicted by the opinions of non-examining physicians Dr. De la Rosa and Dr. Bugg, who opined that Plaintiff could perform light work. AR 132–33, 143–44. Because Dr. Jemjem's opinion was a contradicted treating source opinion, the ALJ was required to provide "specific and legitimate" reasons for discounting it. *Lester*, 81 F.3d at 830.

At the outset it is worth noting that the ALJ assigned Dr. Jemjem's opinion little weight, but did not reject Dr. Jemjem's opinion outright while simply adopting other less restrictive

opinions in the record. An accurate comparison is a bit more nuanced.

In many respects, the ALJ assessed limitations falling somewhere in between Dr. Jemjem's opinion and the other medical opinions in the record. AR 27, 29. For example, whereas Dr. Jemjem opined that Plaintiff could sit for 20-minute increments, and Dr. Van Kirk and Wagner opined that Plaintiff could sit without restriction, the ALJ found that Plaintiff could sit for 2-hour increments. AR 27, 598, 688, 951.

In other respects, the ALJ's RFC was less restrictive than the treating and examining opinions. For example, whereas Dr. Jemjem opined that Plaintiff could never or rarely perform postural activities, and Dr. Van Kirk opined that Plaintiff could occasionally perform postural activities, the ALJ found that Plaintiff could occasionally perform some postural activities and frequently perform others. AR 27, 598, 688, 951.

Finally, in some respects the ALJ's opinion was in fact more restrictive than Dr. Jemjem's opinion and the examining opinions. For example, whereas Dr. Jemjem and Dr. Van Kirk identified no manipulative or environmental limitations, and Dr. Wagner identified some manipulative but no environmental limitations, the ALJ assessed both manipulative and environmental limitations finding that Plaintiff was limited to no more than frequent reaching and frequent exposure to loud noises. AR 27, 598, 688, 951.

Plaintiff identifies four purported errors in the ALJ's analysis of Dr. Jemjem's opinion, which will be addressed in turn.

### 1. Consistency with Treatment Records

First, Plaintiff takes issue with the ALJ's finding that Dr. Jemjem's opinion was inconsistent with Dr. Jemjem's own treatment notes from August 2017. Br. at 10 (citing AR 29). Specifically, the ALJ stated as follows:

For example, the opinion is not corroborated by the medical evidence and in many

9

respects is inconsistent with such especially in light of Dr. Loza's[5] own treatment reports. For instance, in August 2017, Dr. Loza referred the claimant out for a left hip x-ray and prescribed Norco for pain. However, but in that same report, he also noted there was normal tone and motor strength with no cyanosis, edema, or varicosities in the extremities and the claimant ambulated with a normal gait. In addition, at that time, the claimant denied any weakness or numbness in the lower extremities.

AR 29 (citations omitted). Plaintiff contends the ALJ's reasoning is faulty insofar as she improperly focused on a single examination encounter at the expense of other records in the medical file, and because that single examination encounter was outside the relevant period. Indeed, as the ALJ noted, the relevant period was the time between Plaintiff's alleged disability onset date of December 1, 2011, and her date last insured of June 30, 2016. AR 25. Thus, it unclear why the ALJ discussed the consistency of Dr. Jemjem's opinion with medical records from August 2017 which demonstrated normal tone, motor strength and gate.

In response, Defendant identifies other records *within* the relevant period which also demonstrated normal tone, motor strength and gate. Resp. at 4, Doc. 27 (citing AR 673, 685–87, 983). However, it is the ALJ's articulated reasoning, not the Defendant's, that is under review. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219 (9th Cir. 2009)(noting that courts must "review the ALJ's decision based on the reasoning and factual findings offered by the ALJ — not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking."). The Court agrees that the purported inconsistency between Dr. Jemjem's opinion and records from August 2017, was not a legitimate reason for the ALJ to assign Dr. Jemjem's opinion little weight.

### 2. Consistency with Exercise Recommendation

Second, Plaintiff disagrees with the ALJ's finding that Dr. Jemjem's opinion conflicted with his recommendation that Plaintiff exercise for weight loss and overall health. Br. at 11

---

[5] The ALJ incorrectly referred to Dr. Loza Jemjem as "Dr. Loza."

(citing AR 29). Plaintiff contends that there is no support for the ALJ's finding that an exercise routine would exceed the limitations identified in Dr. Jemjem's opinion, and that the ALJ's finding constituted improper speculation. Br. at 11–12 (citing *Lee v. Colvin*, 633 Fed. Appx. 427, 428 (9th Cir. 2016) (unpublished) ("The ALJ also cited the doctor's approval of an exercise program, but without some indication of what such a program would entail it is hard to see how that recommendation contradicted the doctor's opinion regarding Lee's limitations.")).

Notably, the above quote that Plaintiff pulled from *Lee* is in fact from the dissenting opinion. In *Lee*, the ALJ found that the exercise recommendation of the plaintiff's treating physician was inconsistent with the physician's assessed limitations. *Lee v. Colvin*, No. CV-13-00759-PHX-DGC, 2014 WL 268572, at *5 (D. Ariz. Jan. 24, 2014), aff'd, 633 F. App'x 427 (9th Cir. 2016). The district court found that to be a specific and legitimate reason for the ALJ to assign the treating physician's opinion little weight. *Id.* The Ninth Circuit affirmed notwithstanding that there was no indication in the record as to what the exercise program would entail (as observed by the dissent).

Plaintiff provides no reason for the Court to reach a different conclusion here. Dr. Jemjem's opinion assessed strict and extensive mobility limitations. It was not overly speculative for the ALJ to conclude that a recommendation for non-specific "regular exercise" was inconsistent with those limitations absent some indication in the record as to what exercises Dr. Jemjem believed Plaintiff could perform without exacerbating her conditions. The ALJ's finding on this point was a specific and legitimate reason to assign Dr. Jemjem's opinion little weight.

### 3. <u>Consistency with Daily Activities</u>

Third, Plaintiff disputes the ALJ's finding that Dr. Jemjem's asserted limitations are "inconsistent with the claimant's report that she was swimming a lot, able to travel cross

11

count[r]y to reach port for an international cruse within two months of cervical fusion." AR 29. Plaintiff contends that there is no indication Plaintiff exceeded Dr. Jemjem's activity restrictions while on vacation, and the act of traveling does not inherently conflict with his opined limitations. Br. at 12.

Plaintiff cites two district court opinions in support of her contention that the ALJ's reasoning was not specific and legitimate. Both cases are distinguishable. In *Woodfill*, the court found that the plaintiff's psychological limitations were not inconsistent with her vacation travel, particularly given that "during her vacations, she would often remain[] alone in her hotel rooms." *Woodfill v. Astrue*, No. C08-1790-CRD, 2009 WL 3297317, at *8 (W.D. Wash. Oct. 13, 2009). In *Davis*, the court rejected the ALJ's conclusion that the claimant's vacation travel was inconsistent with her physician's assessed limitations, including his need to rest, his limited ability to maintain attention and concentration, and his inability to complete a normal workday/workweek without interruptions. *Davis v. Colvin*, No. 14-CV-04237 NC, 2015 WL 12697628, at *4 (N.D. Cal. June 30, 2015). The court also noted that the claimant's wife testified he snorkeled for no more than 30 minutes at a time and spent time in bed resting. *Id.*

Here, by contrast, there is no evidence that Plaintiff took any measures to limit her activities to only those permitted by her physician's assessed limitations. Moreover, there is no obvious reason why a claimant suffering emotional difficulties (as in *Woodfill*) or suffering concentration difficulties and requiring rest (as in *Davis*) would not be able to engage in vacation travel. Here, by contrast, it is fairly self-evident why vacation travel (and air travel in particular) was inconsistent with Dr. Jemjem's assessed limitations, including sitting no more than 20 consecutive minutes, walking for 5 minutes every 30 minutes, and elevating her legs above the heart during periods of prolonged sitting. The evidence regarding Plaintiff's vacation travel was a specific and legitimate reason for the ALJ to assign Dr. Jemjem's opinion little weight.

### 4. Opinion Based on Plaintiff's Subjective Complaints

Finally, Plaintiff disputes the ALJ's finding that Dr. Jemjem's opinion "appears to be based upon the subjective complaints of the claimant, rather than examination findings of limitations associated with her severe impairments." Br. at 12 (citing AR 29). The ALJ explained "[i]n fact Dr. Loza's reliance upon the claimant's subjective complaints is evident in a treatment report indicating that her workup for osteoarthritis was based on subjective complaints of pain, not clinical or objective findings." AR 29 (citing AR 838). The treatment report the ALJ cited reflects that Dr. Jemjem ordered additional testing regarding the underlying cause of her arthritis in response to Plaintiff's complaints and her inquiring as to what type of arthritis she had. AR 838. The ALJ did not discuss the subsequent findings of the additional testing Dr. Jemjem ordered, only his reasoning for ordering the testing in the first place. Irrespective of whether Dr. Jemjem had a sound basis for ordering testing, this does not undermine the validity of the testing results, which the ALJ did not discuss. Dr. Jemjem's reasoning for ordering testing is not a legitimate reason for the ALJ to discount his opinion.

### VIII. Conclusion

The ALJ offered four reasons for discounting Dr. Jemjem's opinion. The purported inconsistency of his opinion with August 2017 treatment records was not a legitimate reason, nor was the fact that his workup for osteoarthritis was purportedly based on Plaintiff's subjective complaints. However, the ALJ did identify two specific and legitimate reasons for discounting his opinion, namely that his opinion was inconsistent with his exercise recommendation, and inconsistent with Plaintiff's reported activities, including vacation travel. Moreover, his opinion contrasted with four other opinions in the record, including two examining and two non-examining sources, which further supported the ALJ's decision.

**IX.    Order**

Based on the foregoing, the Court finds that substantial evidence and applicable law support the ALJ's conclusion that Plaintiff is not disabled.  Accordingly, Plaintiff's appeal from the administrative decision of the Commissioner of Social Security is denied.  The Clerk of Court is directed to enter judgment in favor of Defendant Andrew Saul, Commissioner of Social Security, and against Plaintiff Christie Harvey.

IT IS SO ORDERED.

Dated:   **December 23, 2020**                        **/s/ Gary S. Austin**
                                                                              UNITED STATES MAGISTRATE JUDGE